UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-61 (KMM)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LARRY WALLACE LINDBERG,

    Defendant.

**PLEA AGREEMENT AND SENTENCING STIPULATIONS**

The United States of America and defendant LARRY WALLACE LINDBERG (hereinafter referred to as the "defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota (hereinafter the "United States" or the "Government"). This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1.     **Charges**. The defendant agrees to plead guilty to Count One of the Information, which charges the defendant with tax evasion, in violation of 26 U.S.C. § 7201. The defendant fully understands the nature and elements of the crimes with which he has been charged.

2.     **Factual Basis**. The defendant is pleading guilty because he is in fact guilty of Count One of the Information. In pleading guilty, the defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

1



SCANNED
APR 2 1 2022
U.S. DISTRICT COURT ST. PAUL

Defendant Larry Wallace Lindberg was a pharmacist who lives in Minnesota. Lindberg is the founder, owner, and Chief Executive Officer of Midwest Medical Holdings, LLC, a company that sells durable medical equipment and pharmaceuticals to hospice and other medical facilities.

Midwest Medical Holdings had between 160 and 200 employees and approximately $17 million in annual revenue. The company's total payroll was between approximately $5 million and $6 million a year.

As the owner and CEO of Midwest Medical Holdings, Lindberg was responsible for filing tax returns and paying taxes on behalf of the company, including federal payroll taxes. Lindberg filed, or caused to be filed, quarterly federal payroll tax returns for Midwest Medical Holdings. The returns showed that the company owed several hundred thousand dollars in federal payroll taxes each quarter.

Despite knowing of the company's federal payroll tax obligations, Lindberg failed to pay over to the Internal Revenue Service ("IRS") some or all of the company's federal payroll tax obligations each quarter.

In or about 2011, the IRS began attempting to collect the federal payroll taxes owed by Midwest Medical Holdings. These collection efforts continued for years. During that time, Lindberg entered into a number of installment agreements in which he agreed to make regular payments towards the tax debt.

Lindberg defaulted on each of the installment agreements and failed to make the agreed-upon payments to the IRS.

In the wake of these defaults, the IRS attempted to collect the taxes owed by Midwest Medical Holdings. Among other things, the IRS attempted to levy the company's bank accounts and accounts receivable, as well as search for assets that could be seized to pay the taxes owed.

Lindberg took various affirmative acts to evade the IRS's collection of the tax debt. Among other things, Lindberg diverted funds from Midwest Medical Holdings to other limited liability companies in order to evade payment of his tax obligations and the IRS's collection of the tax debt. Lindberg used the diverted funds to purchase real estate, fund personal travel, and for personal spending. Lindberg also placed real estate and assets in the name of limited liability companies controlled by third-party owners in order to disguise his ownership and control of the property.

For example, in or about May 2015, Lindberg arranged for Individual A to purchase and serve as the nominal owner of a Florida vacation property in order to hide Lindberg's ownership and control of the property from the IRS. Lindberg arranged a loan to fund Individual A's purchase of the property and subsequently provided Individual A money with which to make the monthly loan payments. Lindberg had the personal use of the property. From in or about March 2015 to January 2019, Lindberg provided Individual A approximately $440,000 for use in purchasing and making loan payments for the property, as well as to pay homeowners association fees for the property. These funds were diverted from Midwest Medical Holdings.

As of December 2020, Midwest Medical Holdings has an outstanding tax balance of more than $4.4 million. With interest and penalties, Midwest Medical Holding owes approximately $6,058,980 in federal payroll taxes.

| Tax Form | Tax Period ending | Assessed Balance | Failure to Pay Penalty | Total Interest | Total Taxes Due |
|---|---|---|---|---|---|
| 941 | Sept. 2012 | $48,072.93 | $63,136.93 | $105,407.03 | $216,616.89 |
| 941 | Dec. 2012 | $272,804.34 | $60,206.21 | $113,766.79 | $446,777.34 |
| 941 | June 2016 | $412,022.34 | $89,570.08 | $101,907.98 | $603,500.40 |
| 941 | Sept. 2016 | $481,200.84 | $104,608.88 | $109,903.63 | $695,713.35 |
| 941 | Dec. 2016 | $451,706.07 | $98,196.98 | $97,071.48 | $646,974.53 |
| 941 | March 2017 | $394,518.44 | $85,764.88 | $79,467.50 | $559,750.82 |
| 941 | June 2017 | $266,435.09 | $56,788.58 | $45,788.77 | $369,012.44 |
| 941 | Sept. 2017 | $94,524.20 | $17,731.15 | $15,702.47 | $127,957.82 |
| 941 | Dec. 2017 | $337,615.51 | $72,193.74 | $50,123.98 | $459,933.23 |
| 941 | March 2018 | $443,101.59 | $96,318.83 | $60,297.10 | $599,717.52 |
| 941 | June 2018 | $18,817.16 | - | $2,124.28 | $20,941.44 |
| 941 | Sept. 2018 | $299,348.81 | $33,658.59 | $32,414.31 | $365,421.71 |
| 941 | Dec. 2018 | $3,873.20 | - | $317.68 | $4,190.88 |
| 941 | March 2019 | $9,973.14 | $365.92 | $984.35 | $11,323.41 |
| 941 | June 2019 | $62,304.14 | $5,580.31 | $2,825.03 | $70,709.48 |
| 941 | Dec. 2019 | $335,115.78 | $17,763.97 | $10,974.74 | $363,854.49 |
| 941 | March 2020 | $471,004.34 | $16,373.72 | $9,206.84 | $496,584.90 |
| Total | | **$4,402,437.92** | **$818,258.77** | **$838,283.96** | **$6,058,980.65** |

3. **Waiver of Indictment.** The defendant waives the right to be charged by Indictment. The defendant agrees to sign a written waiver of this right at the change of plea hearing.

4. **Waiver of Pretrial Motions**. The defendant understands and agrees that the defendant has certain rights to file pre-trial motions in this case. As part of this plea agreement, and based upon the concessions of the United States within this

4

plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to file any pre-trial motions in this case.

5.   **Waiver of Constitutional Trial Rights.** The defendant understands that he has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent him. The defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

6.   **Additional Consequences**. The defendant understands that as a result of his conviction, he could experience additional consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office.

7. **Statutory Penalties**. The defendant understands that Count One of the Information (tax evasion, in violation of 26 U.S.C. § 7201) is a felony offense that carries the following statutory penalties:

   a. a maximum of 5 years in prison;

   b. a supervised release term of not more than 3 years;

   c. a maximum fine of $250,000, or twice the gross gain or loss caused by the offense, whichever is greatest;

   d. restitution as agreed to by the parties in this agreement; and

   e. a mandatory special assessment of $100.

8. **Guidelines Calculations**. The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq*. Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guidelines calculations. The parties stipulate to the following guidelines calculations:

   a. <u>Base Offense Level</u>. The parties agree that the base offense level is 24. U.S.S.G. §§ 2T1.1(a)(1) and 2T4.1(H).

   b. <u>Specific Offense Characteristics</u>. The parties agree that no other specific offense characteristics apply.

   c. <u>Chapter 3 Adjustments</u>. The parties agree that no Chapter 3 adjustments apply.

   d. <u>Acceptance of Responsibility</u>. The government agrees to recommend that the defendant receive a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the government of his intention to enter a plea of guilty, the government agrees to recommend

    that the defendant receive an additional 1-level reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing, including frivolously denying facts in the Presentence Report. Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an enhancement for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility, including moving to withdraw his guilty plea after it is entered.

  e. <u>Criminal History Category</u>. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category I. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on his true criminal history category, and he will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

  f. <u>Guidelines Range</u>. If the adjusted offense level is 21, and the criminal history category is I, the Sentencing Guidelines range is 37 to 46 months of imprisonment.

  g. <u>Fine Range</u>. If the adjusted offense level is 21, the Sentencing Guidelines fine range is $15,000 to $150,000. U.S.S.G. § 5E1.2(c)(3).

9. **Revocation of Supervised Release.** The defendant understands that if he were to violate any condition of supervised release, the defendant could be

sentenced to an additional term of imprisonment up to the length of the original supervised release term, subject to the statutory maximums set forth in 18 U.S.C. § 3583.

10. **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Probation Office or the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court will make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines range. If the Court or the Probation Office determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

11. **Agreements as to Sentencing Recommendation**. The parties are free to recommend whatever sentence they deem appropriate. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

12. **Special Assessment**. The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is convicted, pursuant to Guideline § 5E1.3. The defendant agrees to pay the special assessment prior to sentencing.

13. **Restitution Agreement.** Defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, does not apply. Nevertheless, the defendant agrees, pursuant to 18 U.S.C. § 3663(a)(3), that the Court shall order him to pay restitution in the amount of $6,058,980 to the Internal Revenue Service. The defendant agrees that the IRS will use the amount of restitution ordered as the basis for a civil assessment under 26 U.S.C. § 6201(a)(4). The defendant does not have the right to challenge the amount of this restitution-based assessment. *See* 26 U.S.C. § 6201(a)(4)(C). The defendant agrees that neither this agreement nor anything relating to the criminal proceedings limits in any way the ability of the IRS to seek to collect any amounts owed by the defendant, including potential additional taxes due and owing and applicable interest and penalties.

14. Defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the Defendant. Defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution and fines ordered by the Court. Defendant agrees to complete a financial statement within two weeks of the entry of his guilty plea. The defendant further agrees to execute any releases that may be necessary for the United States to obtain information concerning the Defendant's assets. If requested by the United

States, the Defendant agrees to submit to one or more asset interviews or depositions under oath.

15. **Disclosure of Assets.** The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution fines, and forfeiture ordered by the Court. The defendant agrees to complete a financial statement, agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets, and expressly authorizes the United States to obtain a credit report on the defendant to evaluate his ability to satisfy financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

16. **Venue Waiver.** Recognizing that the criminal conduct in this case occurred in the State and District of Minnesota, as well as in various other states and districts in the United States, the defendant waives all rights to challenge venue in the State and District of Minnesota.

17. **Waivers of Appeal and Collateral Attack.** The defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes, but is not limited to, the defendant's waiver of the right to appeal guilt or innocence,

sentence and restitution, and the constitutionality of the statutes to which the defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by defendant of the substantive reasonableness of a term of imprisonment above 46 months of imprisonment, and an appeal by the government of the substantive reasonableness of a term of imprisonment below 37 months of imprisonment. The defendant also waives the right to petition under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel.

18.  The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

19.  **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552 and 552A.

20. **Complete Agreement**. The defendant acknowledges that he has read this plea agreement and has carefully reviewed each provision with his attorney. The defendant further acknowledges that he understands and voluntarily accepts every term and condition of this plea agreement. This plea agreement, along with any agreement signed by the parties before entry of the plea, is the entire agreement and understanding between the United States and the defendant.

Date: 4-21-2022

Date: 4-21-2022

Date: 4-21-2022

ANDREW M. LUGER
United States Attorney

BY: JOSEPH H. THOMPSON
Assistant United States Attorney

LARRY WALLACE LINDBERG
Defendant

THOMAS B. BREVER
Counsel for Defendant